UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Nicole Lawtone-Bowles, *et al.*,

    Plaintiffs,

—v—

The City of New York,

    Defendant.

16-CV-4240 (AJN)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

    Plaintiffs, six Motor Vehicle Operators ("MVOs") employed by the New York City Department of Homeless Services ("DHS"), brought an action on behalf of themselves and all others similarly situated alleging that Defendant City of New York failed to comply with various provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). First Amended Complaint ("Am. Compl."), Dkt. No. 14. Specifically, Plaintiffs allege that the City failed to properly compensate them for overtime, incorrectly calculated their rate of overtime pay, and failed to pay overtime in a timely manner. *Id.* Defendant moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Amended Complaint in its entirety for failure to state a claim. Defendant's Memorandum of Law in Support of Its Motion to Dismiss the First Amended Complaint ("Br."), Dkt. No. 18.

    For the following reasons, the Court GRANTS in part and DENIES in part the motion to dismiss.

1

## I. Background

On a Rule 12(b)(6) motion, a court must take the facts alleged in the complaint as true and draw all reasonable inferences in plaintiffs' favor. *See N.Y. Life Ins. Co. v. United States*, 724 F.3d 256, 261 (2d Cir. 2013). Accordingly, the following statement of facts is drawn from the Amended Complaint.

Plaintiffs are, and at all material times have been, employed as MVOs by DHS. Am. Compl. ¶ 4. Named Plaintiffs Nicole Lawtone-Bowles, Ramzan Alli, Gib Brown, Lance Predmore, Dennis Tobin, and Charles Smith all worked at DHS's Prevention Assistance and Temporary Housing (PATH) center in the Bronx, and they bring the action on behalf of all MVOs who work or have worked for DHS at the material times. *Id.* ¶ 7. MVOs transport homeless individuals and families to temporary housing placements, train stations and airports, and transport DHS employees between DHS facilities, among other duties. *Id.* ¶ 9. MVOs are generally scheduled for 5 shifts of 8 hours and 30 minutes each week, of which 30 minutes each day is automatically deducted for uncompensated meal period; thus, Plaintiffs are scheduled to work 40 hours per week. *Id.* ¶ 10.

According to the Amended Complaint, the City's approach to compensating MVOs for overtime violates the FLSA in three ways.

First, Plaintiffs plead that MVOs frequently work uncompensated overtime hours. Plaintiffs "frequently work overtime on their scheduled work days and weekends" because they "frequently work through the unpaid meal periods without compensation," and "frequently work additional hours before the official start time and after the official end time of their regularly scheduled shifts," causing them to "work in excess of 40 hours in each week that they perform off-the-clock duties." *Id.* Plaintiffs allege that they "regularly work these additional uncompensated hours in workweeks in which they work over 40 hours." *Id.* The Amended Complaint goes on to plead more specifics about uncompensated overtime, which the Court addresses below. *Id.* ¶¶ 11-19, 25-29.

Second, Plaintiffs allege a miscalculation of the rate of MVOs' overtime pay. When MVOs work the "night shift," they are entitled to receive "night shift differential pay" equal to ten percent of their basic rate of pay, but Defendant fails to include this in the regular rate of pay when calculating overtime. *Id.* ¶ 20. The Amended Complaint goes on to plead more specifics about improperly calculated overtime rates, which the Court addresses below. *Id.* ¶¶ 20, 31-36.

Third, Plaintiffs claim that when they are paid overtime compensation in cash, Defendant improperly delays the payment beyond the next pay period. *Id.* ¶ 22. The Amended Complaint goes on to plead more specifics about delayed overtime payment, which the Court addresses below. *Id.* ¶¶ 23, 38-42.

Plaintiffs seek to recover liquidated damages equal to their unpaid compensation, interest on their unpaid compensation, attorney's fees and costs, and declaratory judgment. *Id.* at 17.

## II. Discussion

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Determining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679)

While allegations made upon information and belief satisfy the pleading standards, especially when "facts are peculiarly within the possession and control of the defendant," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), that the defendant possesses the exact records does not allow plaintiffs to shirk their pleading obligations. *Angiulo v. Cty. of Westchester*, No. 11-CV-7823(CS), 2012 WL 5278523, at *3, n. 4 (S.D.N.Y. Oct. 25, 2012).

### A. Uncompensated Overtime

The FLSA requires that "for a workweek longer than forty hours," an employee who works in "excess of forty hours" shall be paid for that excess work "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Therefore, "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).

Defendant analyzes Plaintiffs' claims of uncompensated overtime using two separate groups of Plaintiffs. The complaint pleads more detail in relation to one group than the other. The Court addresses each in turn.

#### 1. Plaintiffs Lawtone-Bowles, Alli, Smith, and Brown

Defendants argue that Plaintiffs fail to plausibly plead a FLSA overtime claim with respect to four of the named Plaintiffs – Lawtone-Bowles, Alli, Smith, and Brown. Br. at 12. For all named plaintiffs, and for those similarly situated, Plaintiffs plead that they are scheduled for five shifts of 8 hours and 30 minutes each week, for which 30 minutes is uncompensated meal time. Am. Compl. ¶ 10. Plaintiffs therefore are scheduled to perform a minimum of 40 hours of work per week. *Id.* The overtime work arises, according to the complaint, when Plaintiffs "frequently" work through their unpaid meal periods and "frequently" work additional time before the official start and end of their scheduled shifts. *Id.* Plaintiffs "regularly work these additional uncompensated hours in workweeks in which they work over 40 hours." *Id.*

4

As to the pre-shift work, all plaintiffs are more specifically alleged to "begin work 10 minutes to 30 minutes before the official start time of their shifts and perform pre-shift activities, including but not limited to the [usual tasks discussed above] as well as preparing for their shift by retrieving equipment and vehicle keys, walking to the parking garage to retrieve the vehicle, cleaning the vehicle and taking the vehicle for repairs, for which they are not properly compensated." *Id.* ¶ 11.

Uncompensated post-shift work activities occur "approximately 2 to 4 times a week" and include MVOs' normal tasks "as well as transporting families and individuals, solving problems with placement sites, helping families unload their luggage, driving through heavy traffic, refilling the vehicle's fuel tank, cleaning the vehicle, returning the vehicle to the parking garage, finalizing trip sheets and submitting receipts." *Id.*

Plaintiffs provide that they work through their 30-minute meal periods "approximately 2 to 4 times a week, performing the [usual tasks discussed above] for which they are not compensated, such as transporting families and individuals to various locations." *Id.*

The Complaint then proceeds to give specific examples as to the four above-named plaintiffs. For Lawtone-Bowles, she "arrives and begins working approximately 30 minutes before the start of every shift," preparing by "retrieving equipment for her work vehicle, retrieving the work vehicle keys, walking to the parking garage to pick up her work vehicle, cleaning the vehicle and filling it with gas." *Id.* ¶ 12. She also works after the end of her shift "approximately 2 to 3 times a week for approximately 30 to 90 minutes," as she is still "transporting families and individuals to placement sites." *Id.* This may be caused by "traffic," a "problem with the placement site," or if "the family has a lot of luggage to unload." *Id.* After her shifts, Lawtone-Bowles also "refills the vehicle's fuel tank, cleans the vehicle, returns the vehicle to the parking garage and walks 2.5 blocks from the garage to PATH." *Id.* At PATH, "she organizes receipts and finalizes her trip log before she clocks out." *Id.* Plaintiffs continue that these tasks cause her to work in excess of 40 hours per week without compensation, and offer two specific weeks – February 2, 2014 to February 8, 2014 and December 27, 2015 to January 2,

5

2016 – in which she worked more than 40 hours while not being compensated for 2 hours and 1.5 hours of overtime respectively. *Id.* Moreover, the Complaint alleges that during these weeks in which she performed "off-the-clock duties," she also worked during her meal periods without compensation. *Id.*

Similar claims are made for the other three: Alli, Smith, and Brown. *See id.* ¶¶ 13-15. For example, Alli begins working "approximately 15 to 30 minutes before the start of his shift approximately 3 times a week," doing similar tasks to Lawtone-Bowles. *Id.* ¶ 13. Two specific weeks – May 3, 2015 to May 9, 2015 and June 7, 2015 to June 13, 2015 – are referenced as times in which Alli was not compensated for the entirety of his overtime. *Id.* For Plaintiff Brown, the Complaint does not specify on which days he is normally scheduled for shifts, *id.* ¶ 15, but given the earlier statement that "MVOs are scheduled for 5 shifts," *id.* ¶ 10, this is not fatal to Brown's claim.

Defendant argues that these allegations are insufficient to state a claim, dismissing the claims that each plaintiff "routinely" works in excess of 40 hours per week as a "boilerplate" allegation. Br. at 12. When it comes to the eight specific weeks mentioned (two for each plaintiff), Defendant objects that the pleadings "do not allege what tasks were performed that led to this uncompensated work, when such tasks were performed (i.e., before or after a plaintiff's shift), or with what frequency plaintiffs performed these tasks leading them to work uncompensated time." *Id.* at 13. Moreover, Defendant attempts to turn the allegations around on these plaintiffs, as the specific allegations suggest that they *were* compensated for much of their overtime, and argues that the "failure to plead any facts explaining what plaintiffs were doing that was uncompensated is fatal to their claims." *Id.* at 13-14.

The cases relied upon by Defendant do not support its position. Take *Lundy* for example, a Second Circuit case upon which both parties rely extensively. 711 F.3d at 106. In *Lundy*, the Court held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Id.* at 114. Plaintiffs have done so here with respect to each of these four

6

individuals. Am. Compl. ¶¶ 10, 12-17. The *Lundy* plaintiffs did not regularly work 40 hours a week, and so their failure to allege that their uncompensated time put them over the 40-hour mark in any given week was fatal. *Id.* at 114-15. That is not the case here.

Other recent Second Circuit cases also rely upon markedly different facts in affirming a district court's dismissal of a FLSA overtime claim. In *Nakahata v. New York-Presbyterian Healthcare System*, the Second Circuit held that "[t]o plead a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." 723 F.3d 192, 201 (2d Cir. 2013). Plaintiffs here have done so directly, providing details about the length, frequency, and nature of their pre-shift, post-shift, and lunch-time activities, on top of allegations that Plaintiffs were scheduled to work forty hours a week. Am. Compl. ¶¶ 10-17. By contrast, in *Nakahata*, Plaintiffs had not alleged that they were scheduled to work forty hours such that their additional tasks would yield a work week above forty hours. 723 F.3d at 201. And in *Dejesus*, the Circuit elaborated on *Lundy*'s requirement that a plaintiff "allege overtime without compensation in a 'given' workweek," and said that "[w]hile this Court has not required plaintiffs to keep careful records and plead their hours with mathematical precision," they are required to draw on their memory and experience to provide complaints with "sufficiently developed factual allegations." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013); *see Bustillos v. Academy Bus, LLC*, No. 13-CV-565(AJN), 2014 WL 116012, at *3 (S.D.N.Y. Jan. 13, 2014). Again, this describes what Plaintiffs have done. Am. Compl. ¶¶ 10-17; *cf. DeJesus*, 726 F.3d at 89 (finding that "Dejesus provided less factual specificity that did the plaintiffs in *Lundy* or *Nakahata*").

### 2. Plaintiffs Predmore and Tobin

The only difference in how Predmore's and Tobin's claims are pled from the other four named plaintiffs is in the lack of any specific week cited as one in which Predmore or Tobin worked more than 40 hours. Am. Compl. ¶¶ 16-17. Instead, with respect to their claims,

Plaintiffs rely on more generalized statements of approximation. Consequently, Defendant's arguments for dismissal are stronger here.[1]

For Predmore and Tobin, in addition to the generalized claims made with respect to all six named plaintiffs, Plaintiffs offer certain specifics. The Amended Complaint alleges that Predmore arrives "approximately 20 to 30 minutes before the start of his shift and performs pre-shift activities," including "checking emails, filling the vehicle's fuel tank, cleaning the vehicle[,] taking the vehicle for repairs, and transporting families and individuals to and from placement sites, airports and train stations." *Id.* ¶ 16. When he performs these activities, as well as when he "performed work activities identified above during his meal periods," it causes him "to work in excess of 40 hours per week, for which he is not compensated." *Id.* The specifics offered for Plaintiff Tobin are similar in form and substance. *Id.* ¶ 17.

Defendant compares the allegations for Predmore and Tobin to the plaintiffs in a series of cases in which dismissal was granted. Br. at 9. But the cases Defendant cites are factually distinct in material ways.

In *Cromwell v. New York City Health & Hospitals Corporation*, the plaintiff was regularly scheduled to work 37.5 hours per week, meaning that any alleged "uncompensated work" did not necessarily push him over the 40 hour mark to allege uncompensated overtime. No. 12-CV-4251(PAE), 2013 WL 2099252 (S.D.N.Y. May 15, 2013). This is a fatal deficiency because, "[s]o long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week." *Lundy*, 711 F.3d at 116. The same exact deficiency is present in *Lundy*, as the plaintiffs, who all worked regular shifts of under 40 hours a week, did not make allegations sufficient to connect the dots between their uncompensated tasks and the weeks in which they allegedly worked more than 40 hours. *Id.* at 114. In *Ramos*, this same deficiency is

---

[1] While paragraph 10 of the complaint alleges that Plaintiff Tobin works five shifts a week like all other MVOs, paragraph 17 only lists four shifts. Am. Compl. ¶ 10, 17. Plaintiffs offer a correction in their briefing opposing this motion, clarifying that Mr. Tobin does work five shifts. Plaintiffs' Opposition to Defendant's Motion to Dismiss at 18, n. 2. The Court will excuse the inconsistency.

8

present, as the complaint fails to allege that "any single plaintiff engaged in such ['off the clock'] activities during a week that he or she worked more than 40 hours, or that these activities resulted in a single plaintiff working more than 40 hours in a week." *Ramos v. City of N.Y. Fire Dept.*, No. 13-CV-9225(KBF), 2014 WL 2111687, at *5 (S.D.N.Y. May 9, 2014). For Predmore and Tobin, who normally work 40 hours a week, any additional work they perform is overtime by definition.

In *Walz*, Judge McMahon granted the motion to dismiss because the plaintiffs did not provide "an estimate of how often they worked overtime or for how many hours, nor do they provide the time frame for when these unpaid hours were earned." *Walz v. 44&X Inc.*, No. 12-CV-5800(CM), 2012 LEXIS 161382, at *12 (S.D.N.Y. Nov. 7, 2012). She continues, "[e]ven stating 'most weeks during the entire course of my employment, I worked at least two hours later than my shift, plus a two-hour meeting every day' would be enough detail for this Court." *Id*. Predmore and Tobin meet this minimal standard.

In *Bustillos*, the deficiency is of a slightly different variety, but one inapposite to the present case nonetheless. *Bustillos v. Academy Bus, LLC*, No. 13-CV-565(AJN), 2014 WL 116012 (S.D.N.Y. Jan. 13, 2014). The plaintiff's bare allegation that he would "regularly work 60 to 90 hours per week," absent any factual allegations that gave context to his claim, was insufficient to move plaintiff's claim from speculative and conclusory to plausible. *Id.* at *3. Here, however, Predmore and Tobin add context that helps explain why they worked more than forty hours in a week. Am. Compl. ¶¶ 16-17.

As Judge Forrest explains in *Ramos*, "Put simply, plaintiffs must allege *both* that they actually performed work for 40 hours in a week, and then work of some amount over 40 hours for which they were not compensated." 2014 WL 2111687, at *3 (emphasis in original). The failure of Predmore and Tobin to cite a specific week is not fatal when their baseline workweek is already 40 hours. The Court finds that all Plaintiffs adequately state a claim for uncompensated overtime.

9

### B. Other Claims

#### 1. Failure to Apply Differential Rate to Overtime

Defendant argues that Plaintiffs do not plausibly plead their claim that Defendant miscalculated plaintiffs' overtime pay by failing to include the night shift differential. In addition to Plaintiffs' general allegations as to their overtime work and entitlement to the rate, their Amended Complaint also provides reference to specific weeks during which four of the six named plaintiffs (all but Alli and Predmore) should have, but did not, receive this differential rate applied to their overtime compensation. Am. Compl. ¶ 21.

Section 207(e) of the FLSA, pursuant to regulations promulgated by the Department of Labor, 29 CFR Part 778, *et seq.*, requires that all forms of remuneration be included in the rate at which overtime is paid. The collective bargaining agreement between the City of New York and plaintiffs' union specifies that plaintiffs should receive a ten percent shift differential for all scheduled hours worked between 6 P.M. and 8 A.M. with more than one hour of work between 6 P.M. and 8 A.M. *See* Declaration of Aliza Balog, Exhibit A ("Collective Bargaining Agreement"), Art. III, Sec. 1. Plaintiffs allege that the "failure to include night shift differential pay in plaintiffs' regular rates means that when plaintiffs receive paid overtime for working over 40 hours a week, they are paid at a rate that is below the rate mandated by the FLSA." Am. Compl. ¶ 33.

Defendant argues that plaintiffs fail to plausibly plead this claim in a number of ways. First, the City reiterates its argument that plaintiffs have not sufficiently pled that they worked more than 40 hours in a given workweek such that the requirement that the night shift differential be included in the calculation of overtime takes effect. Br. at 15. As discussed above, the Court rejects this argument, as Plaintiffs plead sufficient facts, drawing inferences in their favor, to establish that they work over 40 hours in a work week at various times.

Defendant lodges other criticisms, including that plaintiffs have not "pled that their regular rate includes them working hours between 6 P.M. and 8 A.M.," that they have not alleged that "they worked at least a full hour between 6 P.M. and 8 A.M....so as to qualify for

10

the night shift differential," and that some plaintiffs have not alleged "what tasks they were performing that caused them to work between 6 P.M. and 8 A.M., given that their alleged regular shifts end before 6 P.M." *Id.*

While Defendant makes various factual errors,[2] these criticisms are valid as to certain named plaintiffs. Plaintiffs Lawtone-Bowles, Smith, and Brown are asserted to have regular schedules in which their entire shifts fall within the night shift window of time. Am. Compl. ¶¶ 12, 14, 15. Additionally, Tobin, whose shifts normally run mostly during the daytime, is specifically alleged to have worked "5 shifts between the hours of 6:00 PM to 8:00AM," during the week of January 11, 2015 to January 17, 2015, "for which defendant failed to include the night shift differential when calculating the regular rate for overtime payments." *Id.* ¶ 21. Thus, drawing inferences in favor of the plaintiffs, if an individual's normal schedule has him or her working 40 hours a week at night, it stands to reason that any overtime should be compensated with the inclusion of the ten percent shift differential.

By contrast, there are no factual allegations specific to Plaintiffs Alli and Predmore establishing that they ever worked hours entitling them to night shift differential pay. For this reason, there is little question that the complaint does not adequately plead this claim for those plaintiffs, and any claims brought on these grounds with respect to Plaintiffs Alli and Predmore are dismissed.

### 2. Improper Delay in Overtime Payment

Finally, Plaintiffs allege that when they are paid for overtime compensation in cash, "defendant delays the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours," in violation of 29 USC § 207(a) and 29 CFR § 778.106. *Id.* ¶ 22. The FLSA allows for delays "reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." 29 CFR § 778.106. But Plaintiffs allege that the

---

[2] *Compare* Br. at 15 (alleging Plaintiff Smith works only four shifts, and that plaintiffs do not plead that they regularly work a night shift) *with* Am. Compl. ¶¶ 12, 14-15.

11

delays are due, in actuality, to "a failure by management personnel to approve overtime payments or management's withholding of such payments until the next budgetary quarter." Am. Compl. ¶ 38. Plaintiffs offer two specific instances, related to Brown and Lawtone-Bowles, to supplement an otherwise conclusory allegation. *Id.* ¶ 23.

Defendant moves to dismiss this claim on two related grounds. First, as the prompt payment requirement only applies to overtime, if, as Defendant argues, Plaintiffs did not plead more than 40 hours of work in a given workweek, this claim would fall. Br. at 16. Given the above discussion regarding overtime, the Court finds that this was sufficiently pleaded. Second, Defendant argues that Plaintiffs' failure to allege that the specific instances cited were during weeks of more than 40 hours of work is a fatal omission. *Id.* The Court, drawing inferences in plaintiffs' favor, finds that the use of the word "overtime" within this context implies that the plaintiffs worked more than 40 hours in a given workweek, triggering the application of this provision of the FLSA.

However, Defendant, in its reply brief, also points to a difference between two groups of plaintiffs in how their claims are pleaded, highlighting a flaw similar to that discussed above with respect to the shift differential claims. While Plaintiffs point to specific weeks of overtime for Brown and Lawtone-Bowles that were not timely paid, Am. Compl. ¶ 23, in the absence of similarly specific allegations for the other four named plaintiffs, their claims remain purely conclusory. Reply at 9 ("[C]laims as to two plaintiffs are not sufficient to plead plausible claims as to all plaintiffs."). Simply stating that an unlawful thing occurred is insufficient.[3] The Court grants the motion to dismiss on Count III for Plaintiffs Alli, Smith, Predmore, and Tobin.

### III. Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part the City's motion to dismiss. The Court DENIES the motion to dismiss Count I (failure to pay overtime) in

---

[3] The few additions to the Amended Complaint in this case that Plaintiffs' counsel made when compared to the Complaint in *Campbell v. City of New York*, are not enough to save these claims. *See* No. 16-CV-8719 (AJN), 2017 WL 3206332 (S.D.N.Y. July 25, 2017).

its entirety. Count II (failure to properly calculate overtime regular rate of pay) is dismissed as to Plaintiffs Alli and Predmore. Count III (untimely payment of overtime) is dismissed as to Plaintiffs Alli, Smith, Predmore, and Tobin.

An initial pretrial conference shall be scheduled in a separate order.

This resolves Docket Number 17.

SO ORDERED.

Dated: September ___, 2017
New York, New York

_____
ALISON J. NATHAN
United States District Judge