**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NICOLE LAWTONE-BOWLES, et al.,

Plaintiffs,

-against-

CITY OF NEW YORK, ,

Defendant.

16-CV-4240 (AJN) (OTW)

JAMES BOOKMAN., et al.,

Plaintiffs,

-against-

CITY OF NEW YORK,

Defendant.

18-CV-4338 (AJN) (OTW)

**OPINION & ORDER**

**ONA T. WANG**, **United States Magistrate Judge**:

Plaintiffs in the two related actions *Lawtone-Bowles v. City of New York* and *Bookman v. City of New York* bring these actions against the City of New York (the "City"). Plaintiffs are nineteen individuals who work or worked for the City's Department of Homeless Services ("DHS") as Motor Vehicle Operators ("MVOs"). (ECF 155 at 1[1]). Plaintiffs bring Fair Labor Standard Act ("FLSA") claims for the City's failure to pay wages and overtime compensation properly. (ECF 155 at 2). The parties submit their proposed FLSA settlement agreement to the

[1] Unless otherwise mentioned, all ECF numbers correspond to ECF filings in the lower-numbered case, *Lawtone-Bowles*.

Court for approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (ECF 155-1). All parties have consented to my jurisdiction for approval for the settlement agreement in accordance with 28 U.S.C. § 636(c). (ECF 156). For the reasons below, the Court **APPROVES** the settlement.

**I. Background**

Plaintiffs were employed or are employed by the City as DHS MOVs. Plaintiffs' primary job duties include operating passenger cars, vans, and trucks; transporting DHS clients and their belongings to and from shelters and permanent housing; transporting DHS employees and materials to and from work locations; assisting in loading and unloading materials, equipment, and passengers; and performing inspecting, cleaning, and light maintenance of vehicles. (ECF 155 at 1). Plaintiffs allege that the City failed to: (1) compensate them for pre-shift and post-shift work (the "Uncompensated Pre- and Post-Shift Overtime Claim"); (2) compensate them for overtime work performed during unpaid meal periods (the "Meal Period Claim"); (3) properly calculate the regular rate of pay by failing to include night shift and vehicle differentials in the regular rate ("Regular Rate Claim"); (4) timely pay overtime ("Delayed Payment Claim"); and (5) pay overtime at the rate of one and one half times the regular rate of pay ("Straight Time Claim"). (ECF 155 at 2).

Plaintiffs filed their complaints in June 2016, *Lawtone-Bowles* ECF 1, and May 2018, *Bookman* ECF 1. In *Lawtone-Bowles*, the City twice moved to dismiss. (ECF 8 (motion to dismiss the complaint), ECF 17 (motion to dismiss the amended complaint)). In September 2017, Judge Nathan granted in part and denied in part the motion to dismiss the amended complaint. (ECF 36). After *Bookman* was filed, the two actions were accepted as related. The parties engaged in

extensive discovery. (ECF 155-3 ¶ 13). The parties cross-moved for summary judgment in both actions. (ECF 100, 104). In June 2020, Judge Nathan granted in part Plaintiffs' motion for summary judgment, on the Regular Rate and Straight Time claims, and denied the City's motion. (ECF 126). Trial was scheduled for March 2021 on the remaining claims, and parties had begun preparing for trial. (ECF 147). The parties appeared before me for settlement discussions on September 9, 2020, December 2, 2020, December 8, 2020, and January 5, 2021. The parties reached a settlement and filed their settlement agreement materials in February 2021. (ECF 155).

## II. Discussion

Fed. R. Civ. P. 41(a)(1)(A) permits the voluntary dismissal of an action brought in federal court, but subjects that grant of permission to the limitations imposed by "any applicable federal statute." The Second Circuit has held that "in light of the unique policy considerations underlying the FLSA," this statute falls within that exception, and that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. This Court will approve such a settlement if it finds it to be fair and reasonable, employing the five non-exhaustive factors enumerated in *Wolinsky v. Scholastic Inc.*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted).

**a. Range of Recovery**

The Total Settlement is $962,323.00, allocated as:

- $147,614.00 in backpay,
- $152,476.00 in liquidated damages,
- $1,000.00 service award to lead plaintiff, Nicole Lawtone-Bowles,
- $605,549.00 for attorneys' fees, and
- $55,684.00 for costs.

In other words, Plaintiffs' recovery is $300,090.00 for backpay and liquidated damages, which represents 75% of Plaintiffs' total claimed damages using a three-year recovery period and a full award of liquidated damages.[2] (ECF 155-3 ¶ 8). The average net settlement amount to each Plaintiff is $15,794.21. Plaintiffs' counsel would receive a total of $661,233.00 in

[2] When examining the proportion of recovery, courts often look at what a plaintiff would receive rather than the total settlement amount. *See, e.g.*, *Rosario v. Structural Preservation Systems, LLC*, No. 18-CV-83 (HBP), 2019 WL 1383642, at *2 (S.D.N.Y. Mar. 27, 2019); *Rojas v. Bronx Moon LLC*, No. 17-CV-5825 (KMK), 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018); *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531 (PAE), 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016); *Beckert v. Ronirubinov*, No. 15-CV-1951 (PAE), 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015). Because one of the primary purposes of a *Cheeks* approval is to protect the employee, I concur with this approach.

attorneys' fees and costs. Given the risks of litigation as noted below, the Courts finds this amount reasonable.

**b. Burden and Risks of Litigation**

Settlement enables the parties to avoid the burden and expense of preparing for trial. The parties acknowledge that the factual disputes present in this case present them with risks were they to proceed with litigation. (ECF 155 at 2-3). The City faces risk because of the litigation expenses, especially with the costs of trial, and burdens in establishing their respective defenses. Plaintiffs face risk in establishing the amount of moneys owed with each claim and also increased costs with a trial. With a settlement, the Plaintiffs can obtain immediate recovery versus a delayed recovery or none at all for certain claims. (ECF 83 at 2).

**c. Arm's Length Negotiation**

The parties represent that the settlement was a product of an arm's-length negotiation represented by competent and experienced wage and hour counsel. (ECF 155 at 3). Additionally, the parties' counsel appeared before me multiple times to discuss the settlement. The parties further exchanged relevant documents and an open sharing of facts and information. There is no evidence to the contrary.

**d. Risk of Fraud or Collusion**

There is nothing in the record to suggest that fraud or collusion played a role in the settlement.

**e. Attorneys' Fees**

The attorneys' fees and costs award of $661,233.00 is high, but ultimately reasonable. The award represents 68.7% of the total award. Although there is not a proportionality

requirement, attorney fees settlements generally amount to a third of the settlement award. *See, e.g.*, *Singh v. MDB Construction Mgmt., Inc.*, No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Rodriguez-Hernandez v. K Bread & Co.*, No. 15-CV-6848 (KBF), 2017 WL 2266874, at *5 (S.D.N.Y. May 23, 2017) ("In this Circuit, courts typically approve attorneys' fees that range between 30 and 33 1/3 %."). However, the ultimate standard in FLSA cases is reasonableness and there is no proportionality requirement in the FLSA. *See Fisher v. SD Protection, Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (holding that the FLSA "simply provides for a 'reasonable attorney's fee to be paid by the defendant"). "The size and difficulty of the issues in the case are factors to be considered in making a fee award." *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-CV-4216 (RLE), 2014 WL 3778173, at *10 (S.D.N.Y. July 31, 2014).

For the five years spent litigating this case, Plaintiffs' counsel, Spivak Lipton LLP and McGillivary Steele Elkin LLP, spent 1,850.45 hours on the action. (ECF 155-3 ¶ 10[3]; 155-4 at 40[4]). The complexity of representing nineteen individual Plaintiffs presented factual and logistical challenges. (ECF 155-3 ¶ 16). Counsel's work included, *inter alia*, hiring a damages expert to compile and analyze complex and voluminous data, defending all nineteen plaintiffs' depositions, taking the City's FRCP 30(b)(6) deposition, and drafting and responding to numerous discovery demands. Further, there was complex motion practice in this case: there were two rounds of motions to dismiss briefing in *Lawton-Bowles*, which resulted in an amended complaint; Plaintiffs also moved for summary judgment and opposed the City's cross-

[3] McGuillivary Steele Elkin LLP spent 1,659.90 hours on the action.

[4] Spivak Lipton LLP spent 190.55 hours on the action.

motion. The parties were also preparing for what would have been a lengthy and complex trial before the case ultimately settled. Additionally, there were extensive negotiations and quantitative analysis, requiring experts, for settlement. Given that each Plaintiff is already recovering about 75% of her total possible recovery, the amount of attorneys' fees and costs is reasonable. Counsel has expended significant time and labor, resulting in a favorable outcome for Plaintiffs.

Public policy also weighs in favor of approving the fee amount. Given the risks of litigation and the complexities of representing nineteen plaintiffs, with different theories of liability, counsel's work was not simple. Further, each individual Plaintiff's wage claims might have otherwise been too small to justify the retention of able, legal counsel. *See Fisher*, 948 F.3d at 604 ("If plaintiffs' attorneys [in FLSA cases with a small individual recovery] are limited to a proportional fee of their client's recovery . . . , no rational attorney would take on these cases unless she were doing so essentially pro bono."); *see also* ECF 155-3 ¶¶ 22-24; ECF 155-4 at ¶¶ 5-12 (describing counsel's expertise).

The proposed amount of $661,233.00 is less than the total recorded fees and costs submitted by Plaintiffs' counsel, $958.020.13, reflecting $848,151.28 for work performed by McGillivary Steele Elkin LLP and $109,868.85 for work and expenses incurred by Spivak Lipton LLP. (ECF 155-3 ¶ 33; ECF 155-4 ¶ 13). Upon review of the billing records (ECF 155-3, ECF 155-4), I find that the requested time and rates are reasonable. *See, e.g. Tatintsian v. Vorotyntsev*, No. 16-CV-7203 (GHW), 2020 WL 2836718, at *5 (S.D.N.Y. June 1, 2020) (approving partner rates of $375 per hour, associate rates of $300 per hour, and paralegal rates of $150 per hour); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 55 (S.D.N.Y. 2015) (approving partner

rates of $675 per hour); *Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13-cv-2255 (KMW), 2014 WL 2781846, at *7 (S.D.N.Y. June 19, 2014) (collecting cases awarding $400 to $735 per hour for partners).

A lodestar cross-check supports the requested fees. The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate). *See James v. China Grill Mgmt.*, No. 18-CV-455 (LGS), 2019 WL 1915298 at *8 (S.D.N.Y. 2019); *see also Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case."). Multiplying the hourly rates here by the hours of work performed results in a lodestar of $848,151.27. (ECF 155 at 14). In comparison, the fees requested are $605,549.00. The lodestar cross-check results in a multiplier under one, 0.71. Courts often approve multipliers higher than this. *See, e.g.*, *James*, 2019 WL 1915298, at *3 (citing FLSA cases awarding fees where multipliers ranged from 2 to 4.9); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438 (S.D.N.Y. 2014) ("And several courts have awarded only a fraction of the lodestar amount (confusingly referred to as a 'negative lodestar') when the lodestar is a high proportion of the settlement fund." (citing cases)). Thus, the lodestar cross-check supports the amount of fees sought.

**f. Additional Factors**

The release is appropriately limited to claims based on Plaintiffs' employment with the City. *See Caprile v. Harabel Inc.*, No. 14-CV-6386 (MHD), 2015 WL 5581568, at *2 (S.D.N.Y. Sept. 16, 2015) (finding limitation to employment-related claims sufficiently narrow).

This agreement lacks certain objectionable provisions that courts have found fatal in other proposed FLSA settlements. The proposed settlement agreement contains no confidentiality provision and has already been filed in the public record. *See Thallapaka v. Sheridan Hotel Associates LLC*, No. 15-CV-1321 (WHP), 2015 WL 5148867, at *1 (S.D.N.Y. Aug. 17, 2015) (finding "overwhelming majority" of courts reject confidentiality provisions in FLSA settlements). Nor does the agreement contain a non-disparagement provision. *See Martinez v. Gulluoglu LLC*, No. 15-CV-2727 (PAE), 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) (finding non-disparagement provisions generally contravene the FLSA's purpose).

The $1,000.00 service award to Ms. Lawtone-Bowles is appropriate. "Service awards . . . serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (quoting *Viafara v. MCIZ Corp.*, No. 12-CV-7452 (RLE), 2014 WL 1777438, at 816 (S.D.N.Y. May 1, 2014)). Ms. Lawtone-Bowles contacted counsel to initiate the lawsuit, assisted in gathering facts and evidence, and facilitated communications with the other Plaintiffs. The award to Ms. Lawtone-Bowles is well within the range of awards in this district. *See, e.g., Byrant v. Potbelly Sandwich Works, LLC*, No. 17-CV-7638 (CM) (HBP), 2020 WL 563804,

at *22 (S.D.N.Y. Feb. 4, 2020) (approving service awards between $2,500 and $5,000 to certain plaintiffs).

**III. Conclusion**

For the foregoing reasons, the Court **APPROVES** the parties' proposed settlement agreement, No. 16-CV-4240 ECF 155 and No. 18-CV-4338 ECF 100, as fair and reasonable.

The Clerk of Court is directed to close all open motions in No. 16-CV-4240 and No. 18-CV-4338.

**SO ORDERED.**

*s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge

Dated: April 8, 2021
New York, New York